IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

17 SEP 29 AM 9: 23

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

JERROLD D. JOHNS, JR., individually and on
behalf of all other similarly situated,
                                    Plaintiff,

-vs-                                                    Case No.  A-17-CA-553-SS

PLUCKERS, INC., et al.,
                                    Defendants.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause,[1] and

specifically Defendants'[2] Motion to Compel Individual Arbitration [#9], Plaintiff Jerrold D. Johns, Jr.

(Plaintiff)'s Response [#17] in opposition, and Defendants' Reply [#20] in support. Having reviewed

the documents, the governing law, and the file as a whole, the Court enters the following opinion and

orders.

### Background

Defendants operate a chain of sports bars and restaurants predominately located in Texas. In

January 2011, Plaintiff was hired to work in the Coach-In-Training (CIT) program[3] at Pluckers-San

---

[1] Plaintiff filed an amended complaint adding additional defendants to this case. *See* Am. Compl. [#9]. IT IS THEREFORE ORDERED that the Clerk of the Court and the parties are instructed to use the style reflected in this order in all future filings.

[2] Plaintiff has named the following as defendants in this suit: Pluckers, Inc.; Pluckers Wing Factory, L.P.; Hook'Em Wings, LLC; Hook'Em Wings No. 2, LLC; M.D. Pluckers Franchising, L.P.; MDS Wings, L.P.; MDS Holdings, L.P.; MD Pluckers, Inc.; Pluckers-Addison, L.P.; Pluckers-Allen, L.P.; Pluckers-Alliance, LLC; Pluckers-Arlington Highlands, L.P.; Pluckers-Attingham, LLC; Pluckers-Austin No. 2, L.P.; Pluckers-Austin No. 2 Management, LLC; Pluckers-Austin No. 3, L.P.; Pluckers-Austin No. 4, L.P.; Pluckers-Austin No. 5, L.P.; Pluckers-Dallas No. 1, L.P.; Pluckers-Dallas No. 1 Management, LLC; Pluckers-Expansion Management, LLC; Pluckers-Expansion 2, LLC; Pluckers-Expansion, L.P.; Pluckers-Grapevine, L.P.; Pluckers-Group 1, L.P.; Pluckers-Group 2, L.P.; Pluckers-Group 2 Management, LLC; Pluckers-Killeen, L.P.; Pluckers-Linc, LLC; Pluckers-Preston RD, L.P.; Pluckers-San Marcos AS, L.P.; and Pluckers-Shepherd, L.P. For simplicity, the Court collectively refers to the Pluckers entities named in this suit as "Defendants."

[3] In keeping with Defendants' sports bar theme, managers are referred to as "coaches" and participants in the management training program are called "coaches in training." Am. Compl. [#8] at 8.



Marcos, AS, L.P. (Pluckers San Marcos). Plaintiff worked for Pluckers San Marcos and an unidentified Pluckers location in Austin, Texas for a total of six years. Resp. [#17] at 3. According to Plaintiff, his hours and pay while working at the two locations "were dictated by MDS Wings, LLP" (MDS Wings), which was "created to contract with and handle human resource functions for Pluckers[-]branded restaurants." Resp. [#17] at 3–4.

On June 8, 2017, Plaintiff filed this lawsuit, alleging Defendants violated the Fair Labor Standards Act (FLSA) and seeking to assert claims on behalf of himself and all other CIT participants. *See* Am. Compl. [#8]. Specifically, Plaintiff contends Defendants violated the FLSA by placing non-exempt employees in salaried positions through the CIT program to avoid paying overtime. *Id.*

When hired, Plaintiff signed an employment agreement and initialed each page of the agreement. *See* Mot. Compel [#9-2] Ex. A.1 (Employment Agreement). The first paragraph of the Employment Agreement states "[t]his Employment Agreement ('Agreement') is entered into between *Jerrold Johns* ('*Johns*' or 'Employee') and Pluckers-Dallas No. 1, LP (Company) (collectively referred to as 'the parties')." *Id.* at 1. On the final page of the Employment Agreement, the company name is listed as "Hook'em Wings, L.L.C., a Texas limited liability company, as General Partner" and a manager's signature is scrawled below. *Id.* at 13. It is undisputed that an entity affiliated with one of the Defendants drafted the Employment Agreement. *See* Resp. [#17] at 7 (stating Defendants were the drafters of the Employment Agreement).

Relevant here, the Employment Agreement contains an arbitration clause. Employment Agreement at 1. The arbitration clause explicitly states "Company and *Johns* agree that in the event of any legal dispute between them or their representatives concerning this Agreement or legal rights arising from or relating to the employment relationship between [them], the parties shall submit their dispute to binding arbitration; . . . ." *Id.* The arbitration clause recognizes three exceptions from the

-2-

obligation to arbitrate legal disputes: the Company may pursue preliminary injunctive relief in court; Plaintiff may file a charge with a federal administrative agency; and the parties are not required to arbitrate claims for unemployment insurance or insured workers compensation claims. *Id.* Among other requirements, the arbitration clause mandates "[t]he duty to arbitrate . . . shall survive the terminations [sic] of this Agreement" and that the parties "waive trial in a court of law or by jury." *Id.*

In light of the arbitration clause contained in the Employment Agreement, Defendants filed a motion to compel arbitration, which has been fully briefed and is now ripe for a decision.

## Analysis

### I.     Legal Standard

Section 4 of the Federal Arbitration Act (FAA) states, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Courts conduct a two-step inquiry in determining whether parties should be compelled to arbitrate a dispute. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). First, the court determines whether the parties agreed to arbitrate the dispute. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 536 (5th Cir. 2003) (citation omitted). Second, if the court finds that the parties agreed to arbitrate, the court next determines whether any federal statute or policy renders the claims nonarbitrable. *Bailey*, 364 F.3d at 264. There is a strong presumption that arbitration clauses cover disputes between parties to such agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24–25 (1983). Such clauses may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

## II. Application

Defendants ask the Court to compel arbitration and argue Plaintiff should be required to pursue his FLSA claims individually rather than as a collective action. By contrast, Plaintiff argues there is no valid arbitration agreement between Plaintiff and any Pluckers entity against whom Plaintiff files his FLSA claims. Alternatively, if arbitration is compelled, Plaintiff argues the arbitrator should decide whether the dispute should proceed as an individual or collective action. The Court examines each of these issues below.

## A. There is a valid arbitration agreement governing this dispute.

In determining whether the parties agreed to arbitrate the dispute, the Court is guided by two questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 378, 381 (5th Cir. 2008)).

As it is a "fundamental principle that arbitration is a matter of contract which cannot be forced upon a party absent its consent[,]" the Court must decide at the outset whether an agreement was reached, applying state law principles of contract. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). Here, it is undisputed Texas law applies. *See* Mot. Compel [#9] at 4 (arguing the agreement to arbitrate is valid under Texas law); Resp. [#17] at 5–7 (applying Texas law in arguing no valid arbitration agreement exists).

Under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC,*

-4-

Civ. A. No. H–12–0291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012) (citing *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.)); *Weiner v. Citigroup*, Civ. A. No. 3:01CV2246–M, 2002 WL 655531, at *2 (N.D. Tex. Apr. 19, 2002) (citing *Henry*, 18 S.W.3d at 688–89). The party seeking to compel arbitration must prove by a preponderance of the evidence such an agreement exists. *See Ffrench*, 2012 WL 1900930, at *2 (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).

If the party seeking to compel arbitration establishes the existence of an arbitration agreement, the burden shifts to the party resisting arbitration to present evidence showing why the arbitration agreement should not be enforced. *Kershaw v. CB Rests., Inc.*, No. 5:15-CA-462-OLG, 2015 WL 12743609, at *1 (W.D. Tex. Aug. 6, 2015) (citing *Wachovia Sec. LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st. Dist.] 2005, no pet.)). The party opposing arbitration may show, for example, the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *Id.* (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001)).

Here, Defendants offer the Employment Agreement—which contains the arbitration clause, was initialed by Plaintiff on each page, and was signed by Plaintiff—as evidence there is a valid agreement to arbitrate Plaintiff's FLSA claims. On the other hand, Plaintiff argues there is no valid agreement to arbitrate because the Employment Agreement defines "Company" as it is used throughout the contract, including in the arbitration clause, to mean Pluckers-Dallas No. 1, LP (Pluckers Dallas). Because Plaintiff was employed by Pluckers San Marcos and a Pluckers location in Austin, Texas, Plaintiff contends he did not agree to arbitrate any claims against the entities for which he worked.

The Court finds Plaintiff's argument unpersuasive. When Plaintiff was hired, he understood he was signing an agreement between himself and his employer governing his employment. *See* Resp. [#17-1] Ex. 1 (Pl.'s Decl.) ¶ 4 ("I remembered I had been required to sign a written agreement relating

to my employment with Pluckers-San Marco, AS LP . . . ."). Moreover, in addition to signing the Employment Agreement, Plaintiff initialed each page, including the pages setting out the arbitration clause. *See* Employment Agreement. Therefore, Plaintiff had notice his Employment Agreement contained an arbitration clause, and Plaintiff nevertheless accepted employment with Pluckers San Marcos. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) ("An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received notice of its arbitration policy and accepted it.") (citation omitted). Consequently, Plaintiff agreed to arbitrate "any legal dispute" concerning rights arising from or relating to his employment unless specifically listed as an exception in the Employment Agreement.

Furthermore, Defendants contend the failure to correctly identify the Company as Pluckers San Marcos was a clerical error. Instead, Defendants point to the fact the Employment Agreement was signed by a manager on behalf of "Hook'em Wings, LLC, a Texas limited liability company, as General Partner." *See* Employment Agreement at 13. Defendants provide evidence Hook'em Wings, LLC is the general partner of MDS Wings. Mot. Compel. [#9-1] Ex. A (Darling Decl.) ¶ 3. Thus, Defendants claim MDS Wings was a party to the Employment Agreement and can enforce the arbitration clause against Plaintiff as both a party to the agreement and as a representative of the Company. *See* Employment Agreement (stating the Company and *Johns* agree to arbitrate "any legal dispute between them or their representatives"); *see also* Resp. [#17] (conceding "Johns' hours and pay while working at the San Marcos and Austin locations were dictated by MDS Wings").

As a result, the Court agrees with Defendants: A valid agreement to arbitrate Plaintiff's FLSA claims exists and Defendants can enforce that agreement. Plaintiff has identified no evidence showing why the arbitration agreement should not be enforced. As neither party argues a federal statute or

-6-

policy renders Plaintiff's claims nonarbitrable, the Court finds the parties should be compelled to arbitrate their dispute.

**B.      The arbitrator must determine whether arbitration can proceed as a collective action.**

It is undisputed the arbitration clause in the Employment Agreement does not explicitly address whether Plaintiff can bring a collective action in arbitration. *See* Mot. Compel [#9] at 3; Resp. [#17] at 10–12. Thus, the Court must first determine who decides, the Court or the arbitrator, if the dispute may be arbitrated as a collective action. Defendants argue the Court should find collective arbitration is unavailable because the Employment Agreement's arbitration clause does not include language deferring arbitrability issues. Plaintiff argues the broad language of arbitration clause indicates the parties agreed the question of a collective arbitration should be decided by an arbitrator. For reasons described below, the Court finds the availability of a collective action in arbitration is an issue for the arbitrator.

The question of arbitrability—the determination of whether an agreement to arbitrate applies to the parties' claims—is generally "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations and quotation marks omitted). "The same is true for the threshold question of whether class or collective arbitration is available under an arbitration agreement." *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195–96 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 373 (2016).

Defendants cite cases from the Third and Sixth Circuits holding the availability of class arbitration is a question for the Court to decide unless the parties explicitly provide otherwise. Mot. Compel [#9] at 7–8 (citing *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) and *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335–36 (3rd Cir. 2014)). However, under binding Fifth Circuit precedent, "when an agreement includes broad coverage language, such as a contract

clause submitting '*all* disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective action is an issue arising out of the agreement that should be determined by the arbitrator." *Id.* (quoting and applying *Pedcor Mgmt. Co. Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 359 (5th Cir. 2003) (emphasis in original)).

Here, the language of the arbitration clause is similar to the language held to authorize deferral of arbitrability issues. *Compare* Employment Agreement at 1–2 (agreeing to arbitrate "any legal dispute . . . concerning this Agreement or the legal rights arising from the employment relationship") *with Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 448, 453 (2003) (plurality opinion) (holding language submitting "[a]ll disputes, claims or controversies arising from or relating to this contract" to arbitration deferred questions of arbitrability) *and Pedcor Mgmt. Co. Inc. Welfare Benefit Plan*, 343 F.3d at 359 (finding a clause submitting to arbitration "any dispute . . . in connection with the [a]greement" delegated the determination of whether the arbitration could proceed as a class or collective action to the arbitrator). Thus, the Court finds the arbitration clause demonstrates the parties intended to submit arbitrability disputes to arbitration.

Defendants make much of how the arbitration clause uses the words "any legal dispute" rather than a phrase like "all disputes." *See* Mot. Compel [#9] at 9–10. But this argument ignores the fact that whether Plaintiff can proceed with a collective action in arbitration is itself a legal dispute concerning the Employment Agreement. Moreover, if Defendants had wanted to except the collective action determination from referral to an arbitrator, they knew how to do so. *See* Employment Agreement at 1 (excluding the pursuit of preliminary injunctive relief by the Company, federal administrative charges filed by Plaintiff, and unemployment insurance or insured workers compensation claims from the obligation to arbitrate). Consequently, the arbitrator must decide if the arbitration can proceed as a collective action.

**Conclusion**

In sum, the Court grants Defendants' motion in part and denies it in part: The parties shall proceed to arbitration, but the question of collective arbitration is for the arbitrator to decide. Additionally, the Court will stay the case pending a final decision by the arbitrator. In the meantime, the parties are instructed to file status reports regarding the arbitration proceedings with this Court every ninety days.

Accordingly:

IT IS ORDERED that Defendants' Motion to Compel Individual Arbitration [#9] is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FURTHER ORDERED that this case is STAYED pending a decision by the arbitrator; and

IT IS FINALLY ORDERED that the parties shall file status reports regarding the arbitration proceedings with the Court every NINETY (90) DAYS.

SIGNED this the 28ᵗʰ day of September 2017.

SAM SPARKS
UNITED STATES DISTRICT JUDGE